Jones, Chief Justice,
delivered the opinion of the court.
This was an action, upon a policy of insurance in the usual form, against loss and damage by fire.
The policy and preliminary proofs were admitted, audit was proved that the building covered by the policy was destroyed by fire, within the term for which the same was insured, and the question turned upon the amount which the assured was entitled to recover.
It appeared in evidence that the building stood upon a lot of ground in the City of New-York, which belonged to J. R. Livingston, who had leased the same to the "plaintiff fora term, which expired on the first day of September 1827, and that the lease contained a clause, entitling the lessee to a renewal upon the terms expressed therein.
The lessor, who was called as a witness, testified that the lease had not been renewed, and that the plaintiff had not given any notice of his desire to renew the same ; but he further stated, that the management of the property was under the charge of agents, and he could not say • what arrangements might have been made in relation to the renewal of the lease. The premises consisted of a cow-house or stable, which stood on the surface of the lot, without any foundation sunk or fixed in the ground, and in one end of which there was a grocery. The building was erected by the assured himself. It cost about $1100, and was at the time of its destruction by the fire worth more than the sum insured upon it. The testimony was, that as it stood upon its location at the time of the fire, the value of it was about $1009 ; but one witness for the defendants stated, that if it had been ne- ' cessary to remove it from the lot, he would not have given more than $200 for it.
Upon this testimony the question was, whether the assured was entitled to recover the whole amount of the sum insured, the *45 same falling short of the intrinsic value of the tenement, or whether he was to be restricted'to the $200, as the value of it under the circumstance of its being to be removed from the premises. The judge held him entitled to recover the full amount of his insurance, and we are now to decide upon the soundness of that opinion.
The claim is by the lessee, upon a contract for insurance against loss and damage by fire, to a building erected by him upon the leasehold premises; a total loss has happened by fire during the term for which the premises were leased ; the value of the building at the time of the loss exceeded the sum insured upon it, and the assured is therefore entitled to the full amount of the insurance towards his indemnity, unless the objection of the defendants is to prevail. The defendants object that the term was about to expire, and no notice had been given of an intention to renew the lease, that the building whs therefore to be removed, and that the value of it subject to removal is the measure of the loss, and the amount to be recovered as an indemnity.
It is certainly true, as a general rule, that the policy of insurance is a contract of indemnity, and that the actual loss upon an open policy is the measure of the indemnity to which the assured is entitled. But will that rule, if applied to this case, sustain the defence 1 The plaintiff insists that this is not an open policy ; and if he is correct in that opinion, and the contract is to be deemed a valued policy, there could be no longer any question of his right to recover to the full amount of his insurance. But I cannot accede to that opinion. The cases to which we are referred for the support of it, so far from sustaining the proposition, are decisive against it, and proceed upon the basis that insurances against loss by fire are open policies upon interest, and protect the assured to the extent only of his insurance on his interest in the premises.
In the two leading cases [Lynch and another v. Dayrell, and another, 3 Bro. Parl. Ca. 497. and the Sadlers’ Com. v. Badcock and others, 2 Atk. 554.] it is held, that policies against fire are not insurances of the specific things mentioned to be insured, and which attach to the realty or pass with the same as incident *46 thereto by assignment, but that they are special agreements with persons insured, against such loss or damage- as they may sustain by the destruction or partial damage of the thing upon the insurance is predicated ; and it follows, that the party for whom the insurance is made must have an interest in the premises at the time of the insurance, and at the time of the loss, or he can sustain no loss against which the contract will entitle him. to indemnity: but it does not follow as a consequence of that attribute of the contract that the policy must be a valued policy; or, in other words, that the sum in which the owner is insured is the sum which he will, in case of a total loss, be entitled to recover. The reverse would be the more natural inference, that the recovery of the assured must be regulated by the value of the property: for if the policy be a personal agreement to indemnify him against loss or damage, -his claim will be satisfied by the reimbursement to him of the actual value of the property at the time, which is the true amount of his loss by the peril, and such I understand to be the doctrine of those cases. In both of them the policy is held to be a contract to make good the loss which the contracting party himself should sustain; but no intimation is given of the right of the assured to the specific sum mentioned in the policy in the case of a total loss, as liquidated damages, or an agreed indemnity. On the contrary that sum is treated as the extent of the insurer’s liability, and not as the measure of the assured’s claim. The same language is spoken by the policy before us. The assured is, by the terms of the contract, insured against loss or damage by fire to the amount of $800, on the building described in the policy. ! The insurance is against the .loss or damage which the party interested in the premises may sustain, whatever the loss or damage may be, provided that it does not exceed $800, to which the indemnity ¡is limited. It is not a ■ contract to pay that sum in case of ■loss, nor .a stipulation that the value of the premises shall, in SUch case, he estimated at that sum. The undertaking is to pay the amount of the actual loss or damage, but with the restriction of the amount of the payment to the sum mentioned in the policy. This intention of the parties is not left to the construction of the terms in which the premises are expressed to b.e *47 insured. The specific agreement of the company which immediately follows in the next clause of the policy fully explains the sense in which the previous terms are used. By that agreement the company promise and agree to make good to the insured, or his personal representatives, all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property specified in the policy during the continuance of the insurance, the loss or damage to be estimated according to the true and actual value of the property at the time the fire shall happen. These stipulations are general, and apply equally to every species of loss or damage, totajas well as partial, fand exclude all pretension to the claim of the sum mentioned fiicy in anease as a valuation of the subject of the insurance, or as liquidated 'damages recoverable by the insured. The printed conditions annexed to the policy, and declare dio be explanatory of the meaning thereof requiring the persons 'sustaining loss or damage by fire, to give notice thereof to the company, and to deliver in a particular account of such loss or damage, signed and verified by oath, and supported, if required, by the books or proper vouchers, conclusively show the contract to be understood by the parties as an open policy, and conclude the assured from claiming satisfaction beyond the actual value of the property he loses by the fire at the time of the loss.
The same principles apply to marine insurances. The policy is a personal contract, and when made on the assured’s own account, the terms of it are that the assured causes himself to be insured, and makes insurance in a given sum, for a specific voyage, or term of time upon the ship or the goods on board of her, against the perils of the sea, and other enumerated risks. And the policy in this form, thus clearly resembling that of the fire policy now before us, is always understood, and held to be an open policy, and to entitle the insured in case of loss, whether total or partial, to an indemnity and recompense to the amount of his actual loss by the perils from which the contract professes to protect him. There may be insurable interests, such as profits in the case of Mumford v. Hallet, [1 Johns. Rep. 433.] for example, which must of necessity be regarded as valued at the amount insured upon them.. And in such cases the policy must *48 be considered a valued, and not an open policy ; but there are ex-to the rule. To make the contract a valued policy, and substitute an agreed valuation of the ship or goods insured for the actual rvalue of them, to be ascertained by proof, as the rule of damages, or measure of the indemnity in case of loss, a special agreement of the parties is as a general rule, required; and a clause is in such cases inserted in the policy, expressing the agreement that the subject insured shall be valued at the sum insured, or a specific sum specially mentioned. And assuming that the principle of valuation may, by the mutual agreement of the parties, be applied to an insurance against loss or damage to property by fire, still the policy must be specially adapted to the case, and must express on the face of it the assent of the parties to the valuation agreed upon between them.
This policy contains no such agreement or valuation, and has no feature of a valued policy. The assured cannot recover any greater satisfaction for his loss than the actual value of the building which was destroyed by the fire at the time of its destruction. But his contract would entitle him to recover the full value of that building at the time of the loss, if the full amount was covered by the policy. And if the actual value exceeds the sum insured, he will of course be entitled to the whole amount of the insurance towards his indemnity. This general proposition, as applicable to open policies, is admitted by bdth parties. They differ upon the rule, or principle of valuation; the insured insisting upon the full intrinsic value of the building as the standard, but the company contending for the relative value of it to the owner, subject to removal from its location at the time of the fire, as the just measure of the indemnity to which he is entitled.
The judge ruled that the intrinsic value of the building at the time was the true measure of the loss within the meaning of the contract of indemnity, and we concur with him in that opinion. The actual value of the premises insured is the standard which the policy obviously contemplated for settling the loss, and adjusting the indemnity. .The agreement is to make good the loss or damage to the property by the fire, and the estimate of that *49 loss or damage is to be according to the value of the property a¡t the time the loss occurs; and the conditions annexed, to which the policy refers for the explanation of its meaning, are too clear to admit of any other interpretation. A particular account of the loss or damage is to be given in ; and the value of the property, if in question, is to be ascertained by the books of account and vouchers of the claimant, which are to come in aid of the estimate of the value of the property at the time of the loss.
But it is said that the policy is a contract of indemnity, and that the principle of indemnity which pervades the insurance must controul the construction of the policy; aúd upon that principle it is insisted, that the value of the property to the assured at the time of the loss, circumstanced as it may then be, in reference to his use and enjoyment of it, is the loss he sustains by the destruction of it, and must he the measure of his indemnity for the loss. It will at once be seen, that if this principle of indemnity is to be admitted, the extent and value of the recovery will in every case vary with the special and peculiar circumstances of the insured, and the local advantages or disadvantages of the building, and the uses to which it is applied; and the intrinsic value of the building, will form no criterion of the loss of the proprietor in case of its destruction. A building, for example, which the necessities of the owner compel him to offer at public sale, for ready money, will be worth to him no more than what it will produce at such a sale, and a building for which there happens to be great competition, will command a much larger price than its true value. Are these incidental and collateral circumstances to enter into the estimate of value under the contract of insurance, and give the rulé of indemnity to the proprietor for the loss of the building 1 Two houses, of equal value may, from their local situation, be very unequal in the revenues they produce to the proprietors; would the loss of them, if destroyed by fire, entitle the proprietors to different indemnities in proportion to the rents, or revenues of the tenants % Would the insurers be compelled to pay double the amount of the cost of the profitable stand, because the location of the tenement made it of that value to the owner, and yet be compellable to pay for the *50 loss of the other tenement, the one half only of its actual cost, because from its unfavourable location, or from some popular prejudice it would sell for no more than one half of its value 1 It is the tenement upon which the insurance is made; and the actual value of it as a building, is the loss of the insured in case of its destruction by fire. To that measure of indemnity the proprietor is entitled, however unproductive the property may be, and he is entitled to no more, whatever revenue he may have derived from the tenement.
The obligation of the contract, then, is to pay the insured the actual value of the tenement as a building, or a proportion of its value, equal to the sum insured upon it in case of the destruction of it by fire within the term for which the policy protects it, for his indemnity for his loss. The policy in terms, refers to the true and actual value of the property at the time of the loss, and makes that value the standard by which to estimate the loss or damage which the insurer is hound to satisfy, and the insured is entitled to claim. This agreement cannot be otherwise understood than as binding the parties to the intrinsic value of the property at the time of its destruction, as the rule by which the indemnity is to be measured, without reference or regard to any special and adventitious circumstances which may enhance or diminish the relative value or importance of it to the insured. It is the true and actual value of the tenement itself at the time, independently of its location, or the insecurity of the title, or ■ terms by which it is held that the insurers agree to make good to the present proprietor in case the loss or damage by fire happens during the continuance of his ownership, and within the term of the insurance. It is of no importance, whether the tenement stands upon freehold, or upon leasehold ground, or whether the lease is about expiring, or has the full time to run when the fire occurs, or whether it is renewable or not. The condition of the policy is satisfied if the title and ownership are in the insured at the time of the insurance, and at the time of the loss, and the measure of his indemnity is the atnount of his interest in the tenement when destroyed by the fire, notwithstanding that the whole interest would have expired the very next day, of soon after the *51 loss occured. But whether there may not be incidents, and special circumstances so intimately connected with the premises, or so permanently attached to them as to affect their intrinsic value, or the insurable interest of the party, who effects the insurance upon them, I am not prepared to say; and it is not material to the decision of the question before us to inquire, for this clearly is not such a case. In this case the tenement belonged exclusively to the insured, and the lease of the lot upon which it stood had 15 days to run, and was moreover renewable. The true and actual value of it exceeded the sum insured upon it, and the loss of it by the fire was absolute and total, and took place within the term for which it was insured. The sole ground of objection to the right to recover the full amount of the insurance is, that the lease was about expiring, and had not been renewed, and it did not appear that the notice required by the lease to entitle the holder to a renewal had been given; and on these grounds the recovery is sought to be limited to the value of the building as a tentment to be removed from the premises. But if that contingency could in any supposable case be brought into the calculation, and suffered to reduce the insurable interest, or the claim to indemnity for the actual loss of the budding by the fire, (which if I am right in my conclusions on the point, would be wholly inadmissible,) still it would not follow that in this case such deduction could be made, for it is not reduced to a certainty that the lease would not have been renewed. Application may have been made to the agents for renewal; or if the time limited for the renewal as a matter of right had been suffered to elapse, the lessee might within the remaining fifteen days of the subsisting term have made an arrangement with the landlord for the continuance of the lease, or he might have sold the tenement to his successor or to the landlord; or, the tenement, which from its construction, not having any foundation or fixture attaching it to the sod was capable of removal, might have been removed to one of the vacant lots in its immediate vicinity of which it appears in proof there were several. In any one of these contingencies the tenement which is found to have been worth upwards of $1000, might well have produced to the owner of it the sum of $800 insured upon it by *52 the defendants. The plaintiff, by the total destruction of it by the fire, lost the means of availing himself of the sale, or the removal 0f it, and may have been compelled by the loss of the building to relinquish the right reserved to him to renew and continue the lease. Besides, if it had been reduced to a certainity that the lease was not to be renewed, and that the building was to be sold or removed, what proof is there that the avails of it if sold, or the value of it if removed to a contiguous lot, would not have been equal to.the sum insured upon it 1 only one witness has been examined to the point, and he simply testifies that he would not have given more than $200 for the building, if it had been necessary to remove it; but to give his testimony decisive weight, he should have stated, what the probable expense would have been to remove it to the adjoining lot, and what its value in such new location would have been; because, if offered for sale, the owner of the contiguous vacant lot might have competed for the purchase of it for that purpose. But witnesses testifying to the point under the most favourable circumstances could only speak from opinion, and the value they would put upon a tenement so circumstanced could be no more than estimates, which would vary with the opinions and views of the witnesses. The value of the building to Dodge, the witness who was examined, for example, would be much less than it would be to the new tenant, who should succeed the plaintiff or the landlord who owned the lot on which it stood, or to the owners of the vacant lots in its immediate vicinity. Are such estimates then a just criterion for the measure of the indemnity of the insured for his loss 1 He was clearly entitled, even upon the principle the defendants would apply to his case, to the price his building would have sold for. What sum it would have produced on a sale of it cannot now be known; but as the fair value of it to himself, if he had continued in the tenure of the premises, or to the tenant who might succeed him, or to the landlord, exceeded the amount of the insurance, he has a just claim upon that principle to a full recovery.
In another view of it, the rule contended for by the insurers would he unequal and' unjust in its operation. The insured pays the premium upon the whole sum, and he insures for the entire *53 risk of the property to that amount, during the whole term of the policy. He has a right, therefore, to claim the amount he thus insures, if he loses property of that value by the peril, during the continuance of the risk : but if other considerations are to . . . enter into the calculations of value, and he is to be paid at a reduced rate, because in certain contingencies the property might fail to produce to him the full value of it as it stood at the time of the loss, he will not have the full benefit of his insurance6 for which he has paid the full premium.
These views of the practical results of a speculative calculation of damages on the principles for which the defendants contend, present to us powerful considerations for preferring the true and actual value of the building as the standard of indemnity.
The intrinsic value of the tenement, as a building at the time of the loss, is not a matter of mere Estimate, but is susceptible of proof. The 9th condition attached to the policy prescribes the form and substance of the proofs required of the claimant to entitle 'him to payment, and the true and actual value of the property at the time of the fire, is the rule by which the amount-of the loss or damage is to be estimated and settled. The rule is uniform and rational; it is in accordance with the letter and spirit of the contract, and administers equal justice to the parties. It was in my judgment rightly applied to this case, and accordingly the motion for a new trial must be denied.
[C. Graham, atty for plff. J. Anthon, atty for defts.]