TIPPMANN REFRIGERATION CONSTRUCTION a/k/a Tippmann & Associates, an Indiana Partnership, Appellant-Plaintiff,

v.

ERIE–HAVEN, INC. and France Stone Co., Appellees-Defendants.

No. 4–383A78.

Court of Appeals of Indiana, Fourth District.

Feb. 8, 1984.

---

Max E. Hobbs, Fort Wayne, for appellant-plaintiff.

John S. Knight, Peters, Terrill, Parrish & Larson, Fort Wayne, for appellees-defendants.

CONOVER, Presiding Judge.

Tippmann Refrigeration Construction (Tippmann) appeals the Allen Superior Court's entry of summary judgment in favor of Erie-Haven, Inc. and France Stone Co. (Erie-Haven).[1]

We affirm in part and reverse in part.

ISSUES

This appeal raises the following issues:

1. Was Tippmann entitled to share the insurance proceeds where the lease-option provided Erie-Haven would "maintain fire and extended coverage insurance" on the leased building?

2. Does the right to make extensive improvements on the lease-option property constitute the independent consideration necessary to extend the option to purchase beyond the termination of the lease?

FACTS

Erie-Haven and Tippmann executed an agreement whereby Tippmann would lease with option to buy an 8-bay garage, worth approximately $12,000 when the agreement was executed. The lessor, Erie-Haven, agreed, "at its expense, to maintain fire and extended coverage insurance on the building being leased herein."

---

1. France Stone Co. is an owner of Erie-Haven, Inc. One firm represents both appellees and asserts the same arguments for each. Therefore, we refer to both appellees when we use the name Erie-Haven.

The agreement also provided lessee Tippmann would be entitled to a credit on the purchase price if it exercised its option to purchase within 12 months from the effective date of the agreement. The credit was to be 50% of the rent paid during the first year of the agreement. Further, the agreement allowed Tippmann to recover certain amounts for improvements if Erie-Haven terminated the agreement before it expired. Finally, other improvements, made with Erie-Haven's approval, were made "at the sole risk" of Tippmann.

The building burned and Erie-Haven terminated the lease. Tippmann then tried to exercise its option to purchase, but Erie-Haven refused to sell the property or share the fire insurance proceeds with Tippmann. This suit resulted.

## DISCUSSION AND DECISION

We have summarized our standard for reviewing a grant of summary judgment as follows:

> When reviewing a grant of summary judgment, we must determine whether there is any genuine issue of material fact, and whether the law was correctly applied. *Hale v. Peabody Coal Company,* (1976) 168 Ind.App. 336, 343 N.E.2d 316. The moving party has the burden of establishing that no material facts are in genuine issue. All doubts and inferences are resolved in favor of the non-moving party. *Smith v. P. & B. Corp.,* (1979) [179] Ind.App. [693], 386 N.E.2d 1232. Accordingly, the products of discovery are liberally construed in the non-moving party's favor. *Podgorny v. Great Central Insurance Co.,* (1974) 160 Ind.App. 244, 311 N.E.2d 640.

> A fact is material if its resolution is decisive of either the action or a relevant secondary issue. *Lee v. Weston,* (1980) Ind.App., 402 N.E.2d 23. The factual issue is genuine if it cannot be foreclosed by reference to undisputed facts, but rather requires a trier of fact to resolve the opposing parties' differing versions. *Stuteville v. Downing,* (1979) [181] Ind. App. [197], 391 N.E.2d 629.

In a word, we are to reverse if there is any genuine issue for the trier of fact to determine.

*Perry v. NIPSCO,* (1982) Ind.App., 433 N.E.2d 44, 46. With this standard in mind, we review Tippmann's claims.

### *I. Insurance Proceeds*

■ The facts relevant to this issue are undisputed. The lease-option agreement unambiguously states: "Lessor agrees, at its expense, to maintain fire and extended coverage insurance on the building being leased herein." This court has, on at least three occasions, said such language in a lease agreement is to be interpreted to benefit both parties. *South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc.,* (1979) Ind.App., 395 N.E.2d 320, 327; *Morsches Lumber, Inc. v. Probst,* (1979) 180 Ind.App. 202, 204, 206, 388 N.E.2d 284, 286–87; *Woodruff v. Wilson Oil Co., Inc.,* (1978) 178 Ind.App. 428, 431, 382 N.E.2d 1009, 1011.

The court in *Woodruff* said

> A lessor always has the right to maintain insurance on the leased property for his own benefit and protection. If the insurance provisions in the case at bar are interpreted as only requiring the Woodruffs to maintain insurance for their own benefit, the provisions are mere surplusage and serve no purpose. It is a general rule of construction that no part of a contract should be treated as surplusage if it can be given a meaning reasonably consistent with the other parts of the contract. *Oard v. Rechter* (1975), [163] Ind.App. [166], 322 N.E.2d 392.

*Woodruff,* 178 Ind.App. at 431, 382 N.E.2d at 1011. That rationale applies here. To say Erie-Haven's agreement to maintain insurance on the leased premises was not for the benefit of both parties would make that provision mere surplusage. Therefore, the trial court erred in granting summary judgment in favor of Erie-Haven on this issue.

Erie-Haven directs our attention to authority which supports the notion a lessee

with an unexercised option to purchase is not entitled to condemnation (and by analogy insurance) proceeds. *Haney v. Denny,* (1963) 135 Ind.App. 317, 193 N.E.2d 648. In *Haney,* however, the individual involved only having an unexercised option attempted to claim an interest in the optioned property or the insurance thereon. *Id.;* 46 C.J.S.Ins. § 1145 (1946). A lease-option provision requiring lessor to insure the building was not involved in such authority. Thus, it does not apply to this case. Accordingly, the trial court erred in granting summary judgment on this issue. We remand for its determination of an appropriate division of insurance proceeds.

## II. The Option

■ The leased building was destroyed by fire on February 14, 1982. Pursuant to the lease-option provision on destruction of the premises, Erie-Haven terminated the lease-option on March 18, 1982. On April 8, 1982, Tippmann attempted to exercise its option to purchase the leased building. Tippmann nevertheless offers two reasons why it should have been allowed to exercise the option. First, Tippmann argues the option was divisible from the lease and supported by independent consideration, thereby extending the option beyond the termination of the lease. Second, Tippmann argues independent equities or grounds of relief justified the extension of the option beyond the termination of the lease.

The parties agree Indiana law allows an option to survive the termination of a lease if the option is separate or divisible from the lease. *Spindler v. Valparaiso Lodge,* (1945) 223 Ind. 276, 59 N.E.2d 895. Tippmann's argument parallels that made in *Spindler:* the option was based on separate consideration. In *Spindler,* our supreme court held the option was not based on separate consideration and was not divisible from the lease. *Id.* at 282, 59 N.E.2d at 897.

■ When we examine the lease-option agreement at issue here, we consider the following factors:

A contract is not entire and indivisible simply because it is embraced in one instrument and executed by the same parties. *Armstrong v. Illinois Bankers Life Association* (1940) 217 Ind. 601, 29 N.E.2d 415, *modified on other grounds,* 29 N.E.2d 953. Our Supreme Court stated in *Samper v. Indiana Department of State Revenue* (1952) 231 Ind. 26, 37, 106 N.E.2d 797, 802:

"The usual test of the severability of a contract is the entirety or divisibility of the consideration; and whether a contract is entire or divisible is controlled by the intention of the parties as it is disclosed by the terms of the contract. It is well established that the parties to a contract intend that it be entire and indivisible when by its terms, nature and purposes it contemplates and intends that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent, or whether it could be completed in part only. *Thompson v. Fesler* (1919), (Transfer denied 1920), 74 Ind.App. 80, 90, 91, 123 N.E. 188; *Traiman v. Rappaport* (1930), 41 F.2d 336, 71 A.L.R. 475, 479; 17 C.J.S., Contracts § 331, p. 786, 787; 12 Am.Jur., Contracts, § 317, p. 873."

*Stoneburner v. Fletcher,* (1980) Ind.App., 408 N.E.2d 545, 549. Did the option survive the termination of the lease?

In support of its argument Tippmann refers us to that portion of the agreement setting forth the improvements it was to make and the credits against the purchase price it was to receive for making those improvements. Erie-Haven argues no separate consideration for the option existed because the contract provides "[a]s a *part* of the consideration herein, the Lessor grants to the Lessee an option ..." (emphasis supplied). We agree with Erie-Haven, further noting the option and lease are embraced in the same instrument, executed by the same parties on the same date. *See Stoneburner, supra.* The following language also illustrates the interdependent, entire nature of the agreement:

NOW, THEREFORE, in consideration of the premises and the mutual promises, acts and obligations of the parties which are hereinafter set forth, it is mutually agreed as follows: ...

The agreement then sets out the rights and liabilities of the parties, including the option to purchase. The agreement is entire, not severable. Thus, the option did not survive the termination of the lease.

Our holding on this issue does not resolve any genuine issue of material fact, however. As we have said,

Their argument the contract's interpretation is a question of fact is incorrect. Release agreements and contracts generally are interpreted as a matter of law. *English Coal Co., Inc. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, 308. Where the language of an instrument is unambiguous, the intent of the parties may be determined from its "four corners." Parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress, or undue influence. *Lippeatt v. Comet Coal & Clay Co.,* (1981) Ind.App., 419 N.E.2d 1332, 1335; *Hauck v. Second National Bank of Richmond,* (1972) 153 Ind.App. 245, 286 N.E.2d 852, trans. den'd. (1973).

*Orme v. Estate of Kruwell,* (1983) Ind. App., 453 N.E.2d 355, 356 (rehearing denied, trans. pending).

■ Finally, Tippmann argues the existence of independent equities supports extending the option beyond the termination of the lease. Tippmann's theory is Erie-Haven received "a windfall which constituted unjust enrichment." The unjust enrichment Tippmann refers to allegedly arises when the value of the building ($12,000) is compared with the amount of insurance proceeds paid Erie-Haven (approximately $75,000). Indiana does not provide options are preserved when independent equities exist. We need not do so today since our holding on the first issue obviates the necessity. Any alleged inequity will be re-moved by division of the insurance proceeds.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

MILLER and YOUNG, JJ., concur.