**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 18 2013, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**VICTORIA CHRIST**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

TIMOTHY J. TAYLOR,                    )
                                      )
    Appellant-Petitioner,             )
                                      )
    vs.                               )    No. 49A05-1209-PC-476
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Respondent.              )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
The Honorable Stanley E. Kroh, Magistrate
Cause Nos. 49G04-0706-PC-099731
49G04-0706-FB-099731

**April 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issues

Timothy Taylor was convicted after a jury trial of robbery, a Class B felony, and intimidation, a Class C felony, and sentenced to sixteen years. Taylor filed a petition for post-conviction relief, which was denied after an evidentiary hearing. Taylor appeals the denial of his petition, raising two issues for our review: 1) whether the post-conviction court erred in finding that he was not denied the effective assistance of trial counsel; and 2) whether the post-conviction court erred in finding that he was not denied the effective assistance of appellate counsel. Concluding Taylor has not demonstrated clear error in the post-conviction court's findings and judgment, we affirm.

Facts and Procedural History

The underlying facts of Taylor's conviction were laid out in his direct appeal:

On May 30, 2007, Sufen Chen, the owner of a massage parlor called "Rejuvenescence," was in the back room of the business when she heard the bell on the front door ring. Chen came to the front room of the business and saw two people leaving in a hurry. One of the people, a very tall, thin black man, re-entered the business and asked for a massage. Chen told the man that he had to make an appointment. The man swung at Chen, pushed her, and pointed at his gun holster, telling Chen to be quiet. Chen saw a black gun in the holster.

The man then pushed Chen and a female employee onto the floor of another room. The man covered Chen and the employee with a towel and walked out of the room before returning with a large man, later identified as Taylor. Taylor watched Chen and the employee while his partner searched the front room.

Taylor's partner, who was never identified, instructed Chen to come to the front room and open the cash register. Taylor and his partner took approximately $600 in cash from the register and the women's wallets.

Taylor told Chen that she would have to give him and his companion $1000 every Friday or "you won't be safe." Taylor then made a hand gesture that Chen interpreted as a sign that he would kill her if she called the police.

2

After the men left the business, the women did not call the police because of their fear of reprisal from Taylor and his companion. However, when Chen informed her husband, Xiao Yang Gheng, of the threats, he told her to contact the police. The next day, Chen contacted the police department.

The Indianapolis police department informed Chen that she should shut down her business for a few days, as the department did not have sufficient personnel to work the case at that time. However, an officer did come and dust for prints. On June 1, 2007, Chen and Xiao were cleaning the closed store when Chen heard someone push on the locked front door. When Chen looked out, she saw that it was Taylor at the door. Taylor left but returned an hour later. Taylor asked Chen whether she was ready to pay "the one thousand," and Chen responded that she would have the money ready in about an hour. Xiao snuck out the back of the business and identified Taylor's car as a Silver Nissan with Connecticut plates. Xiao also made note of the license number.

Chen called the police and a detective came to the business. While the detective was at the store, Taylor called Chen about the money. Taylor told Chen to bring the money to a Walgreen's store on High School Road in Indianapolis.

Using the description of the car given by Xiao, Indianapolis officers saw Taylor's vehicle in the area, made a stop, and arrested him. Chen subsequently identified Taylor as the man who had been in her store on May 30, 2007. During the identification, Taylor again made the hand sign, indicating that he was pointing a gun at Chen. An officer saw the hand sign and identified it as a "shooting motion."

Taylor v. State, 921 N.E.2d 55 at *1-2 (Ind. Ct. App., Feb. 9, 2010) (internal citations omitted), trans. denied. Taylor appealed, raising four issues: 1) whether there was sufficient evidence to support his conviction of intimidation as a Class C felony; 2) whether Chen's testimony was incredibly dubious; 3) whether the trial court erred in granting the State's motion in limine; and 4) whether the trial court abused its discretion in ordering consecutive sentences. This court affirmed on all issues. See id. at *7. Taylor's petition to transfer to the Indiana Supreme Court was denied.

On May 13, 2010, Taylor filed a pro se petition for post-conviction relief, which was later amended by counsel. In the amended petition, Taylor claimed he was denied

his right to effective assistance of trial and appellate counsel.  Following an evidentiary hearing at which both Taylor's trial and appellate counsel testified, the post-conviction court entered Findings of Fact and Conclusions of Law Denying Post-Conviction Relief. Taylor now appeals that denial.

## Discussion and Decision

### I.  Standard of Review

#### A.  Post-Conviction Relief

In post-conviction proceedings, the petitioner bears the burden of proof by a preponderance of the evidence.  Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment."  Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004).  "To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court."  Kubsch v. State, 934 N.E.2d 1138, 1144 (Ind. 2010).

In addition, the post-conviction court entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6).  "The postconviction court is the sole judge of the weight of the evidence and the credibility of witnesses."  Woods v. State, 701 N.E.2d 1208, 1210 (Ind. 1998), cert. denied, 528 U.S. 861 (1999).  Although we do not defer to the post-conviction court's legal conclusions,  Wilson v. State, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003), "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made[,]" Ben-Yisrayl v. State, 729 N.E.2d

4

102, 106 (Ind. 2000) (citation and quotation marks omitted), <u>cert. denied</u>, 534 U.S. 830 (2001). "In short, the question before us is whether there is any way the [post-conviction] court could have reached its decision." <u>Id.</u> (quotation omitted).

### B. Ineffective Assistance of Counsel

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Perry v. State</u>, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009), <u>trans. denied</u>. First, the defendant must show that counsel's performance was deficient. <u>Strickland</u>, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. <u>Id.</u> at 687-88. Second, the defendant must show that the deficient performance resulted in prejudice. <u>Id.</u> at 692. To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Id.</u>

This standard applies when evaluating claims of ineffective assistance of trial or appellate counsel. <u>Stephenson v. State</u>, 864 N.E.2d 1022, 1046 (Ind. 2007), <u>cert. denied</u>, 552 U.S. 1314 (2008).

### II. Trial Counsel

Taylor contends his trial counsel was ineffective in several respects: 1) for telling the jury in opening statements that Taylor would testify but then not calling him as a witness; 2) for failing to object during the State's closing argument to a statement that

5

could be interpreted as an invitation for the jury to draw an adverse inference from Taylor's silence at trial; and 3) for failing to object during the State's closing argument to a statement that improperly vouched for a State's witness.

## A. Defense Opening Statement

Taylor's counsel concluded his opening statement to the jury by stating:

> It's going to be my belief that after you hear the story between Ms. Suefen Chen and Mr. Taylor, you'll come to the right conclusion because everyone else can only tell you information that they received from Ms. Suefen Chen. Listen to the stories. You decide.

Appendix to Brief of Petitioner-Appellant at 187. After the State rested its case, the defense rested without presenting evidence. Taylor contends it was ineffective assistance for his counsel to represent to the jury during opening statements that Taylor would testify and present his version of events and then fail to call him to the stand. Trial counsel testified at the post-conviction hearing that he had little specific recollection about Taylor's case, but discussing whether or not a defendant will testify is something he would normally do with a client before trial:

> The decision to testify or not testify is always within the right of the Defendant. They always make that call. So whether or not that change occurred before, during, or after in any particular trial, that's always the Defendant's ultimate call. As an attorney I give my advice. It would not be uncommon to go into a trial expecting your client to testify, and then based on the way evidence is perceived to make a decision that is either unnecessary or for some other strategic reason not to have them testify.

Transcript of [Post-Conviction] Evidentiary Hearing at 12-13. The post-conviction court found that trial counsel did not expressly promise during opening that Taylor would testify, that it is unclear who thereafter made the decision that he would not testify, and

that without post-conviction testimony or an affidavit attesting to what Taylor's testimony at trial would have been, he has failed to show any prejudice.

The determination of whether or not a defendant should testify is a matter of trial strategy. Whitener v. State, 696 N.E.2d 40, 42 (Ind. 1998). Taylor, however, cites federal authority supporting his position that failing to fulfill a promise in an opening statement to call a certain witness or present certain evidence is ineffective assistance. See Ouber v. Guarino, 293 F.3d 19, 35-36 (1st Cir. 2002) (holding ineffective assistance when defense counsel emphasized importance of the defendant's testimony and promised the testimony to the jurors four different times in his opening statement but then advised her not to take the stand despite her desire to testify; also holding no trial strategy justified the decision since circumstances were unchanged from two earlier trials in which defendant did testify); Harris v. Reed, 894 F.2d 871, 878-79 (7th Cir. 1990) (holding counsel rendered ineffective assistance when he did not present witness testimony promised to the jury during opening and did not consult with defendant about the decision). "The rationale for holding such a failure to produce promised evidence ineffective is that when counsel primes the jury to hear a different version of the events from what he ultimately presents, one may infer that reasonable jurors would think the witnesses to which counsel referred in his opening statement were unwilling or unable to deliver the testimony he promised." McAleese v. Mazurkiewicz, 1 F.3d 159, 166-67 (3rd Cir. 1993), cert. denied, 510 U.S. 1028 (1993). However, the failure to call a witness referred to in opening statements is not per se ineffective. See Williams v. Bowersox, 340 F.3d 667, 672 (8th Cir. 2003) (holding defense counsel was not ineffective for reconsidering presenting the testimony of two witnesses he had promised to the jury);

7

Yancey v. Hall, 237 F. Supp. 2d 128, 135 (D. Mass. 2002) (holding it was not ineffective assistance for petitioner's counsel to promise petitioner would testify and evidence would show he was not the perpetrator of the crime, even though petitioner did not testify and not all of the promised evidence was introduced).

Here, trial counsel's opening statement was primarily directed to the plausibility of the testimony to be given by Chen, the State's primary witness, at the conclusion of which he made a reference to there being "two stories." App. at 187. Taylor's testimony, summarized by his counsel during discussion of the State's motion in limine, would have been that he and Chen were in a dispute over money he owed for illegal prostitution services he received at the spa. The trial court granted the State's motion immediately prior to trial. Also, during the first day of trial, the State stated its intention to question Taylor about additional similar charges pending against him if he testified. Given that it was not settled that Taylor's proffered testimony would have been allowed, it may well be that trial counsel decided Chen's testimony was implausible enough on its own merits not to risk allowing Rule 404(b) evidence to be introduced if Taylor were to testify. Additionally, had Taylor's proffered testimony been allowed, the case would have come down to a question of credibility between himself and Chen, and Taylor would have admitted to participating in illegal activity. The jury could have drawn an adverse inference from this testimony. In short, although at the outset, trial counsel intended to offer Taylor's testimony, and made his opening statement in that expectation, the course of the trial reasonably may have changed that strategy. And, as the post-conviction court noted, there is no way of knowing on this record whether it was trial counsel's strategic decision not to put Taylor on the stand or Taylor's own choice not to testify. The trial

court properly instructed the jury that Taylor was not required to testify and that it must not consider that he did not testify in any way.  That Taylor did not testify despite trial counsel's brief reference to an alternate version of events during his opening statement was not deficient performance by counsel, and Taylor has not demonstrated that the outcome of his trial would have been different if he had been called to testify.  Taylor has failed to show that the evidence unmistakably leads to a conclusion opposite that reached by the post-conviction court on this point.

## B.  State's Closing Argument

During the State's rebuttal closing argument, the following took place:

[State]:  . . . And I didn't want to talk about it but I have to, [defense counsel] brought it up, <u>two plausible stories, no, no, there's not two plausible stories.  There's one.</u>  And that's not a story, it's the truth.
[Court]:  I'm going to ask Counsel to approach the bench, please.  Sorry to interrupt you.
Sidebar Conference
[Court]:  I wouldn't take you out of it but . . . I think we are so dangerously close to commenting on the failure of the defendant to testify and I know you're in an odd position because in opening statement that testimony was promised to the jury.  I'm just concerned that the further we go and that's why I stopped you before you said anything more about two plausible stories . . . .  I'm just struggling here with how we can, I mean there's been no objection so it's not preserved here but by the same token, you know, it just gives me some great pause.  I want you all to think about that. . . . [J]ust see if (unintelligible) if you think there's any need for me to give some sort of an admonishment.
State Rebuttal Closing Argument Resumes
[State]:  . . . You've got the story.  You've got the truth.  The State presented the facts.  As an attorney, <u>I'm ethically bound to present to you what I truly believe to be the truth</u> . . . .  I can only present to you what is the truth.  I'm ethically bound by that and that's what I gave you.  That's what the State gave you.  You have to consider all the evidence and all the testimony. Look at the facts.  What is plausible, what's predictable, what's preposterous?  And what the State presented to you is absolutely the truth.  That's (unintelligible), it's the truth.  <u>And Suefen Chen should be the prime example of the truth.</u>  She was nothing but honest with you.  She has nothing to gain.

9

Transcript [of Trial] at 212-16 (emphasis added).

With respect to the State's closing argument, Taylor's post-conviction petition alleged:

> Counsel's performance was deficient for failing to object to and seek a remedy for the prosecutor's improper closing statement. The deputy prosecutor made statements that could reasonably be interpreted as an invitation to draw an adverse inference from Taylor's silence at trial and violate Taylor's Fifth Amendment privilege against self-incrimination. Additionally the deputy prosecutor made comments which improperly vouched for the state's key witness and implied that the deputy prosecutor possessed information outside that presented at trial. Counsel failed to object in all instances and, in the case of the state's improper comment on Taylor's silence at trial, failed to accept the admonishment offered by the trial judge when she interrupted the deputy prosecutor to caution him against continuing with this improper argument. The totality of the prosecutor's comment is not addressed to other evidence and counsel's objection would have been granted. Taylor was harmed by counsel's error because the deputy prosecutor successfully focused [the] jury onto the fact that Taylor did not testify which was promised by his counsel in opening statement. Counsel should have objected and requested an admonishment against the error.

App. at 65-66. Taylor's trial counsel testified at the post-conviction hearing that he had no specific recollection of his mental processes during the State's closing argument or whether he considered objecting or requesting an admonishment "in the heat of the moment . . . ." Tr. of [P-C] Evid. Hrg. at 10. He testified that generally, he considers "courtesy and respect for the process [and] whether or not sometimes lodging objections in front of a jury may tend to give off a negative impression . . . ." Id. at 13. He noted that he would have considered that the jury would be instructed about the defendant's right to remain silent and that counsel's arguments are not evidence. He also stated that the trial judge stopping the State's closing "would increase the validation of my argument because . . . it would be the Judge pulling them to the side . . . versus me looking

10

defensive and maybe proposing, you know, an intimation to the jury that I'm trying to hide something from them." Id. at 16. Finally, he testified that he "can only assume that I did not feel it was . . . prejudicial based on the temperament and climate and what was going on in that trial itself." Id. at 17. Trial counsel was not specifically asked about the vouching statements.

To prevail on a claim of ineffective assistance due to prosecutorial misconduct, a post-conviction petitioner must show that prosecutorial misconduct in fact occurred. Pruitt v. State, 903 N.E.2d 899, 928 (Ind. 2009). A court applies a two-step test in deciding claims of prosecutorial misconduct. Gasaway v. State, 547 N.E.2d 898, 901 (Ind. Ct. App. 1989), trans. denied. First, the court must determine whether the prosecutor in fact engaged in misconduct. Id. This determination is made by referencing case law and the Rules of Professional Conduct. Second, the court must consider whether the misconduct, under the totality of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. Id.

### 1. Comment on Defendant's Silence

Taylor contends the State made a statement during its closing argument that could reasonably have been interpreted by the jury as an invitation to draw an adverse inference from his failure to testify, and that his trial counsel was ineffective for failing to object to the statement or request an admonishment to the jury. The post-conviction court found that the State was commenting upon the evidence rather than suggesting that guilt could be inferred from Taylor's silence. The post-conviction court also found that trial counsel could have had a strategic reason for not objecting so as not to draw attention to the comment, and that the trial court's interruption made an objection to curtail further

11

statements unnecessary. Finally, the post-conviction court found that Taylor had failed to show prejudice, especially in light of the jury instructions regarding Taylor's right to remain silent.

A criminal defendant has a fundamental right to exercise his Fifth Amendment right against compulsory self-incrimination without adverse inference or comment at trial. Hand v. State, 863 N.E.2d 386, 396 (Ind. Ct. App. 2007). The Fifth Amendment protects a defendant from having the State make direct or indirect comments regarding his silence. Id. The privilege is violated when a prosecutor makes a statement that is subject to "reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." Id. It is not error if the prosecutor's comments, in their totality, focus on evidence other than the defendant's failure to testify. Id. Arguments which focus on the uncontradicted nature of the State's case do not violate the defendant's right not to testify. Hopkins v. State, 582 N.E.2d 345, 348 (Ind. 1991). "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." Hand, 863 N.E.2d at 396 (quoting Dumas v. State, 803 N.E.2d 1113, 1118 (Ind. 2004)). It is the defendant's burden to show that a comment improperly penalized his exercise of the right to remain silent. Nichols v. State, 974 N.E.2d 531, 535 (Ind. Ct. App. 2012).

Taylor's trial counsel stated in his closing argument that "when [the State] tells you that there is [sic] two things in this case he wants you to consider . . . [t]he two things are the two competing stories . . . . I gave you a story at the beginning of this and then throughout the trial, you heard the second story." Tr. at 199. The State then made its comment that there are "not two plausible stories[; t]here's one" on rebuttal. Id. at 212-

12

13. In <u>Martinez v. State</u>, 549 N.E.2d 1026, 1028 (Ind. 1990), the court held that statements commenting upon evidence which was presented, the lack of any evidence to the contrary, and disagreement with statements made by defense counsel in his summation did not improperly reference the fact the defendant had not testified. <u>See also</u> <u>Timberlake v. State</u>, 690 N.E.2d 243, 254 (Ind. 1997) (observing "[d]uring argument, the prosecutor may argue and comment upon the evidence presented at trial. . . . A comment based upon uncontradicted evidence is not equivalent to an impermissible comment upon a defendant's decision not to testify."), <u>cert. denied</u>, 525 U.S. 1073 (1999); <u>Taylor v. State</u>, 677 N.E.2d 56, 61 (Ind. Ct. App. 1997) (holding that prosecutor twice calling evidence "uncontroverted" during closing amounted to a summary of the evidence rather than a comment on the defendant's silence), <u>trans. denied</u>, <u>abrogated on other grounds by</u> <u>Fajardo v. State</u>, 859 N.E.2d 1201, 1207 n.10 (Ind. 2007). In <u>Rowley v. State</u>, 259 Ind. 209, 213, 285 N.E.2d 646, 648 (1972), our supreme court held that a comment on the uncontradicted nature of the State's case was impermissible because the defendant was the only person who could have contradicted the State's case. That is not the case herein, as there were other witnesses to the events in question – Chen's employee and Taylor's alleged accomplice – who could have testified. The statement made by the State herein is akin to those in <u>Martinez</u> and <u>Taylor</u>. We also note that the State said "there are not two <u>plausible</u> stories," which could reasonably be interpreted not as a comment on whether or not the defendant testified but on the quality of the evidence presented. Trial counsel was not required to object or request an admonishment because the statement was not improper.

We acknowledge this particular case is complicated by the fact the trial court was concerned the statement was "dangerously close" to being improper and interrupted the State's closing sua sponte. Clearly, the trial court would have been amenable to sustaining an objection if one had been made and offered to admonish the jury. Nonetheless, the trial court did not indicate it believed the State had crossed the line and trial counsel stated at the post-conviction hearing that he could well have thought the trial court's interruption sufficiently warned the State and did not want to draw the jury's attention to the matter further or make the jury think the defense was trying to hide something. Taylor has failed to show that his trial counsel's performance in this regard was deficient.

### 2. Vouching Statements

Taylor next argues that trial counsel should have objected during the State's closing argument because the State improperly vouched for one of its witnesses. During its rebuttal closing argument, the deputy prosecutor stated that he was "ethically bound to present to you what I truly believe to be the truth." Tr. at 215. He also told the jury that "Suefen Chen should be the prime example of the truth." Id. at 216. The post-conviction court found that Taylor failed to quote any particular statement or provide citation to any particular page of the proceedings in support of his claim and that "[n]o further analysis is possible or appropriate here [because Taylor] has failed to sufficiently state a claim, and as such has not proven deficient performance or prejudice." App. at 149.

We agree with the post-conviction court that Taylor's petition and evidence do not make a case for deficient performance by trial counsel or prejudice to Taylor. The substance and extent of the alleged improper vouching by the State was not specified and

14

trial counsel was asked no questions about it at the post-conviction hearing. Taylor's assertions of prejudice stem from his allegations regarding his Fifth Amendment privilege. Nonetheless, it is not difficult, upon reviewing the State's closing argument, to determine what Taylor contends is objectionable and we briefly address the merits of his argument. It is inappropriate for a prosecutor to make an argument which takes the form of personally vouching for a witness. Gaby v. State, 949 N.E.2d 870, 880 (Ind. Ct. App. 2011) (citing Lainhart v. State, 916 N.E.2d 924, 938 (Ind. Ct. App. 2009)). As set forth in the Rules of Professional Conduct:

> A lawyer shall not . . . in trial . . . assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of the accused . . . .

Ind. Professional Conduct Rule 3.4(e). A prosecutor may comment on the credibility of the witness only if the assertions are based on reasons which arise from the evidence. Cooper v. State, 854 N.E.2d 831, 836 (Ind. 2006).

In both Lainhart and Gaby, we reversed a conviction based in part on improper vouching by the State. See Lainhart, 916 N.E.2d at 938-39 (prosecutor made several comments during voir dire and closing argument pertaining to police officer credibility); Gaby, 949 N.E.2d at 880-81 (prosecutor made several comments during closing argument vouching for the accusing witness's credibility). We note, however, that the procedural postures of Lainhart and Gaby were different than this case; in Lainhart and Gaby, we were reviewing the prosecutor's statements on direct appeal whereas here, we are reviewing trial counsel's response to the prosecutor's statements. Further, in both Lainhart and Gaby, the improper vouching was not the sole reason for reversal. See

15

Lainhart, 916 N.E.2d at 938 ("Although each instance of prosecutorial misconduct alone may not have constituted reversible error, we are persuaded that the cumulative effect of the State's misconduct was to make a fair trial impossible."); Gaby, 949 N.E.2d at 882 (noting that "[s]tanding on its own, the vouching would likely not rise to the level of reversible error"). Even assuming that the prosecutor's statements here were objectionable, we cannot conclude Taylor was placed in a position of grave peril by the prosecutor's conduct or prejudiced by his trial counsel's failure to object. Although Chen's credibility was a central issue at trial, the State told the jury in its closing argument that "[y]ou have to consider all the evidence and all the testimony." Tr. at 215. The trial court instructed the jury both before trial began and before they retired for deliberations that arguments of counsel were not evidence, see Appellant's [Trial] Appendix at 140, 150, and also instructed them that as the exclusive judges of the evidence, they were to decide for themselves the value of evidence and testimony, see id. at 135. In light of other witness testimony and the physical evidence presented at trial and in light of the trial court's instructions to the jury, even if an objection had been lodged and sustained and the jury admonished to disregard the statements, Taylor has not made a case for prejudice and we cannot say the outcome of the trial would have been different.

### III. Appellate Counsel

Finally, Taylor contends that he was denied the effective assistance of appellate counsel when appellate counsel failed to raise a claim regarding prosecutorial misconduct during closing statement. We reiterate our starting point of a presumption of reasonable professional assistance, and that counsel is afforded considerable discretion in choosing

16

strategy, including the important strategic choice of which issues to present on direct appeal. See Reed v. State, 856 N.E.2d 1189, 1196 (Ind. 2006). Additionally, ineffective assistance is rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. Id.

Because trial counsel did not object to the prosecutor's statements during closing argument, appellate counsel could only have raised the issue on appeal by arguing that it constituted fundamental error. To qualify as fundamental error, an error must be a clear and substantial blatant violation of basic and elementary principles which renders the trial unfair to the defendant. Townsend v. State, 632 N.E.2d 727, 730 (Ind. 1994). Fundamental error is error that if not corrected would deny the defendant due process. Ward v. State, 519 N.E.2d 561, 562 (Ind. 1988). Here, we find that Taylor has failed to satisfy the second prong of the Strickland test, which requires that there be a reasonable probability that, but for counsel's errors, the outcome would have been different. See 466 U.S. at 694. Having concluded above that trial counsel was not ineffective for failing to object to and seek a remedy for the prosecutor's closing statement, we do not believe that, even if appellate counsel had raised the fundamental error issue on direct appeal, there was a reasonable probability that the outcome on direct appeal would have been any different. Therefore, appellate counsel was not ineffective for not having raised the issue.

Additionally, at the post-conviction relief hearing, appellate counsel said that he considered the possibility of raising an issue related to statements by the prosecutor in closing argument, but decided against doing so because he thought that it was too closely connected to trial counsel's performance and would be better raised in post-conviction relief proceedings. Our supreme court has held that a post-conviction hearing is the

17

preferred forum to adjudicate an ineffectiveness claim. Woods, 701 N.E.2d at 1219. If appellate counsel had raised a claim of ineffective assistance of trial counsel on this point on direct appeal, Taylor would have been foreclosed from raising any other claim of ineffective assistance in the post-conviction relief proceedings. See id. at 1220. Thus, appellate counsel preserved the issue for Taylor to raise during the post-conviction proceedings by not raising it in the direct appeal. Considering the level of deference that is given to counsel in developing a strategy, and the strategic importance of deciding which issues to raise on appeal, we cannot say that appellate counsel provided ineffective assistance by not challenging the statements of the prosecutor as fundamental error on direct appeal. We hold that Taylor was not denied the effective assistance of his appellate counsel.

### Conclusion

Taylor has failed to meet his burden of demonstrating that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. The judgment denying Taylor's petition for post-conviction relief is affirmed.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.

18